**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| JASON FERNANDES,<br>LAUREN FERNANDES,<br>CINDY BARBERO, MYK BARBERO,<br>JANET PATRI, KEITH PATRI,<br>*individually, and on behalf of all others*<br>*similarly situated*, | )<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | No. 2:24-cv-03928-DCN |
| vs. | )<br>) | **ORDER** |
| D.R. HORTON, INC.,<br>ARCHER EXTERIORS, INC.,<br>PROFESSIONAL EXTERIORS II, LLC,<br>and JOHN DOES 1–50, | )<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

D.R. HORTON, INC.,                                    )
                                                      )
                    Cross-Claimant,                   )
                                                      )
        vs.                                           )
                                                      )
ARCHER EXTERIORS, INC.,                               )
PROFESSIONAL EXTERIORS II, LLC,                       )
                                                      )
                    Cross-Defendants.                 )

ARCHER EXTERIORS, INC.,                               )
                                                      )
                    Third-Party Plaintiff,            )
                                                      )
        vs.                                           )
                                                      )
MARIO SALGADO *a/k/a Maio A. Salgado*,                )
SABINO FINO VILLANUEAVA,                              )
GRACELIA RESA RODILES,                                )
ANTONIO GASPAR *d/b/a MSC*                            )
*Exteriors, LLC,* NZR CONSTRUCTION,                   )

1

LLC, and JAMES BAYLESS,                              )
                              Third-Party Defendants.   )
_____ )

The following matter is before the court on plaintiffs Jason Fernandes, Lauren Fernandes, Cindy Barbero, Myk Barbero, Janet Patri, and Keith Patri's (collectively, "plaintiffs") motion to remand, ECF No. 10.  Also before the court are defendant D.R. Horton, Inc.'s ("DRH") motion to compel arbitration, ECF No. 5, and motion to stay, ECF No. 7.  For the reasons set forth below, the court grants the motion to remand and finds as moot the motions to compel arbitration and motion to stay.

## I.  BACKGROUND

This case arises out of a construction dispute concerning the installation of roofing and exterior vinyl siding on approximately 207 single-family homes in the Legacy at Pine Forest ("Legacy") subdivision in Dorchester County, South Carolina. ECF No. 1-1, Compl.  Plaintiffs are Legacy homeowners.  Id. ¶¶ 3–7.  DRH is a national homebuilding company who designed, developed, constructed, marketed, and sold the Legacy homes.  Id. ¶¶ 10, 20.  DRH constructed the Legacy homes using subcontractors. Id. ¶ 22.  Defendant Archer Exteriors, Inc. ("Archer") was the subcontractor that installed roofing shingles and flashings.  Id. ¶ 23.  Defendant Professional Exteriors II, LLC ("Pro Exteriors") was the subcontractor that installed exterior vinyl siding.  Id. ¶ 24. Defendants John Does 1–50 (collectively along with Archer and Pro Exteriors, "subcontractor defendants") are persons or entities who participated in the construction or sale of the Legacy homes in some capacity.  Id. ¶ 13.

Plaintiffs allege that DRH and the subcontractor defendants deficiently constructed their Legacy homes.  Id. ¶ 28.  Specifically, plaintiffs allege that: (1) DRH

failed to investigate and supervise the subcontractor defendants; (2) the subcontractor defendants failed to properly install roofing and exterior vinyl siding components in accordance with the manufacturer's instructions and building codes; and (3) all defendants failed to use proper materials and correct deficient construction work. Id. ¶ 29. As a result of the alleged construction deficiencies, plaintiffs have suffered property damage caused by wind and water intrusion and structural failures. Id. ¶¶ 27–37.

On May 10, 2024, plaintiffs filed a complaint, on behalf of themselves individually and a putative class,[1] in the Dorchester County Court of Common Pleas against DRH and the subcontractor defendants. ECF No. 1-1, Compl. Plaintiffs allege causes of action for negligence and gross negligence and breach of implied warranties. Id. ¶¶ 58–74. On July 11, 2024, DRH removed the case to federal court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. ECF No. 1 at 3–6. DRH filed an answer and crossclaims on July 18, 2024. ECF No. 4. Archer filed an answer and third-party complaint on August 18, 2024. ECF No. 19.

On July 18, 2024, DRH filed a motion to compel arbitration, ECF No. 4, and a motion to stay proceedings and compel compliance with the South Carolina Notice and Opportunity to Cure Act, S.C. Code Ann. § 40-59-810 et seq., ECF No. 7. Plaintiffs

---

[1] The putative class is defined as: "All persons and entities that own, in whole or in part, a home within the Legacy at Pine Forest development located in Dorchester County, South Carolina." Compl. ¶ 38. The class definition excludes: "(a) any Judge presiding over this action and members of his/her families; (b) Defendants and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendants, and Defendants' current employees, investors, members, or officers; (c) any homeowner who has released all the claims set forth herein; and, (d) all persons who properly execute and file a timely request for exclusion from the Class." Id. At this stage, the putative class has yet to be certified. See id. ¶¶ 38–47.

responded in opposition on August 1, 2024.  ECF Nos. 12; 13.  DRH replied on August 8, 2024.  ECF Nos. 14; 15.

On July 31, 2024, plaintiffs filed a motion to remand.  ECF No. 10.  DRH responded in opposition on August 18, 2024.  ECF No. 16, 2024.  Plaintiffs replied on August 21, 2024.  ECF No. 20.  Archer filed a notice of joinder in DRH's opposition on September 6, 2024.  ECF No. 23.  The court held a hearing on the motions on March 12, 2025.  ECF No. 49.  As such, the motion to remand is fully briefed and ripe for the court's review.[2]

## II.  STANDARD

### A.  Motion to Remand

Federal courts are of constitutionally limited jurisdiction.  See U.S. Const. art. III, § 2.  Original jurisdiction exists where a claim arises from federal law, see 28 U.S.C. § 1331, or where the amount in controversy exceeds the sum or value of $75,000 and the claim is between citizens of different states, see 28 U.S.C. § 1332.

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "The party

---

[2] Though the motions to remand, compel arbitration, and stay are all fully briefed, the court considers the motion to remand first because it implicates the court's ability to abstain.  Mason v. Lockwood, Andrews & Newnam, P.C., 842 F.3d 383, 386–87 (6th Cir. 2016) (stating that if all four elements of the local controversy exception to CAFA are established, "the district court must abstain from hearing the case, despite having jurisdiction under § 1332(d)(2).").  Because the court ultimately grants the motion to remand, the motions to compel arbitration and stay are rendered moot.

seeking removal bears the burden of demonstrating that removal jurisdiction is proper," In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006), and doubts regarding the propriety of removal are to be resolved in favor of retained state court jurisdiction, Baxley v. Advance Auto Parts, Inc., 2011 WL 586072 at *1 (D.S.C. Feb. 9, 2011) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). Because removal raises significant federalism concerns, "[i]f federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

### B. CAFA

"Congress enacted CAFA in 2005 to expand subject matter jurisdiction in the federal courts over 'interstate' class actions 'of national importance.'" Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys., 928 F.3d 325, 329 (4th Cir. 2019) (quoting CAFA, Pub. L. No. 190-2, § 2(b)(2), 119 Stat. 4, 5 (2005)). To accomplish this purpose, it amended the diversity statute, 28 U.S.C. § 1332. Id.; see also Johnson v. Advance Am., 549 F.3d 932, 935 (4th Cir. 2008) ("CAFA amended, among other things, the concept of diversity jurisdiction for class actions to require only minimal diversity."). In general, removal pursuant to CAFA is permissible if the removing party can establish (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs; (2) any member of a class of plaintiffs is a citizen of a state different from any defendant; and (3) there are 100 or more plaintiff class members. 28 U.S.C. § 1332(d)(2), (5)(B).[3]

---

[3] The parties do not contest DRH's removal under CAFA. See ECF Nos. 1; 49. In the notice of removal, DRH alleges: (1) the putative class is expected to total about 400 members; (2) the amount in controversy is in excess of $5,000,000.00 because

The Fourth Circuit has recognized that CAFA not only "amended, among other things, the concept of diversity jurisdiction for class actions to require only minimal diversity," but it also "liberalized the requirements for removing class actions to federal courts." Advance Am., 549 F.3d at 935. A defendant seeking to remove a case under CAFA need only file a notice of removal containing a plausible, "short and plain" statement of the facts to meet the jurisdictional requirements for removal; the notice need not contain evidentiary submissions. See Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 84 (2014). "Evidence establishing the [amount in controversy] is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." Id. at 89.

However, even if a class action is properly removed under CAFA as an initial matter, a plaintiff may move for remand to state court based on a CAFA exception. See Dominion Energy, 928 F.3d at 336; Russ v. Marriott Ownership Resorts, Inc., 2020 WL 12771380, at *2 (D.S.C. Aug. 25, 2020) (considering the local controversy exception); see also Scott v. Cricket Commc'ns, LLC, 865 F.3d 189, 196 n.6 (4th Cir. 2017) ("In CAFA-exception cases, the court has necessarily determined that jurisdiction exists and is only considering whether the exceptions impose a limit."). "Any doubt about the applicability of [an] exception is resolved against the party seeking remand." Priselac v. Chemours Co., 561 F. Supp. 3d 562, 570–571 (E.D.N.C. 2021) (quoting Hood v. Gilster-Mary Lee Corp., 785 F.3d 263, 265 (8th Cir. 2015)).

---

plaintiffs seek compensatory and punitive damages in addition to repair or replacement of roofs and exterior vinyl siding on approximately 200 homes; and (3) there is minimal diversity of citizenship between plaintiffs—citizens and residents of South Carolina—and DRH—a Delaware corporation with its principal place of business in Texas. ECF No. 1 at 3–5.

# III.  DISCUSSION

## A.  Local Controversy Exception

Plaintiffs seek remand to state court based on CAFA's local controversy exception.  ECF No. 10 at 2.  Under the local controversy exception, a district court shall decline to exercise jurisdiction:

> (A)(i) over a class action in which--
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant is a defendant--
>>
>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>
>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>
>>> (cc) who is a citizen of the State in which the action was originally filed; and
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

28 U.S.C. § 1332(d)(4)(A).  Application of the local controversy exception mandates remand to state court.[4]  See 28 U.S.C. § 1332(d) ("A district court shall decline to

---

[4] In accordance with the majority of circuit courts that have considered whether CAFA exceptions function as issues of jurisdiction or abstention, the court recognizes that the exceptions are a form of abstention.  See, e.g., Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 142 (2d Cir. 2013); Mason, 842 F.3d at 392; Morrison v. YTP Int'l, Inc., 649 F.3d 533, 536 (7th Cir. 2011); Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp., 636 F.3d 971, 973 (8th Cir. 2011); Adams v. W. Marine Prods., Inc., 958 F.3d 1216, 1223 (9th Cir. 2020); Dutcher v. Matheson, 840 F.3d 1183, 1190 (10th Cir. 2016); Hunter v. City of Montgomery, 859 F.3d 1329, 1334 (11th Cir. 2017).

exercise jurisdiction . . . ." (emphasis added)).  A plaintiff seeking remand under a CAFA exception bears the burden of establishing each prong of the exception by a preponderance of the evidence.  <u>Russ</u>, 2020 WL 12771380, at *2.  The court may consider the pleadings, briefs and supplemental briefs, and extrinsic evidence providing new details to determine the application of the local controversy exception.  <u>Goldberg v. Skyline Tower Painting Inc.</u>, 2024 WL 1050942, at *3 n.4 (D. Md. Mar. 10, 2024).

CAFA's legislative history reveals that the purpose of the local controversy exception is to permit class actions with a truly local focus to remain in state court.  <u>See</u> S. Rep. No. 109–14, at 38 (2005).  The Fourth Circuit, reviewing CAFA's legislative history for application of the local controversy exception, has stated that a "court's analysis for jurisdictional purposes should focus on whether the case is a truly local controversy warranting remand or whether it is an interstate class action . . . involv[ing] more people, more money, and more interstate commerce that Congress intended to place in federal court."  <u>Quicken Loans Inc. v. Alig</u>, 737 F.3d 960, 965 (4th Cir. 2013) (internal quotation marks omitted).  A controversy is not "local" if "the alleged conduct of primarily out-of-state defendants [ ] caused plaintiffs' injuries" and the action "will have long-lasting implications for interstate commerce and will be felt far beyond the [local] region."  <u>Priselac</u>, 561 F. Supp. 3d at 571 (alteration in original) (quoting <u>Davenport v. Lockwood, Andrews & Newnam, Inc.</u>, 854 F.3d 905, 910 (6th Cir. 2017)).

---

The distinction is relevant because some courts have held that it changes the burden of proof for determining citizenship under the CAFA exceptions—the plaintiffs need not meet the typical rigorous standards for proof of citizenship since the issue falls under abstention rather than subject matter jurisdiction.  <u>Goldberg v. Skyline Tower Painting Inc.</u>, 2024 WL 1050942, at *6–7 (D. Md. Mar. 10, 2024).  Further, because CAFA exceptions are not jurisdictional, the court's inquiry is not limited to the pleadings at the time of removal.  <u>Id.</u>; <u>see</u> <u>Bowen v. Houser</u>, 2011 WL 380455, at *1 (D.S.C. 2011).

Plaintiffs argue that they have established all four prongs of the local controversy exception. ECF No. 10 at 1–2. First, plaintiffs assert that 96% (198 of 207) of putative class members are citizens of South Carolina. Id. at 2. Second, plaintiffs contend that Pro Exteriors and the recently named third-party defendants are local defendants from whom the putative class seeks significant relief, and whose deficient installation of roofing and exterior vinyl siding is a significant basis for their claims. Id. Third, plaintiffs aver that the property damage resulting from the local defendants' conduct occurred within South Carolina. Id. Fourth, plaintiffs assert that no similar class action has been filed within the three years preceding. Id.

In response, DRH argues that plaintiffs cannot satisfy the first, second, and fourth prong of the local controversy exception. See ECF No. 16. DRH contends that plaintiffs have failed to properly identify the putative class and have provided insufficient evidence of South Carolina citizenship. Id. 7–11. Next, DRH contends that the relief plaintiffs seek from any defendant does not rise to the level of "significant." Id. at 2–5. Finally, DRH asserts that plaintiffs have not adequately distinguished the factual allegations of the putative class from those of the proposed class action in Vriens v. Tip-Top Roofing, No. 2:23-cv-06797-DCN (D.S.C. removed Dec. 19, 2023). ECF No. 16 at 5–7.

In reply, plaintiffs assert that application residency-domicile presumption is proper in this case. ECF No. 20 at 7–9. Next, they provide relative calculations of relief sought. Id. at 1–6. Finally, plaintiffs argue that the Vriens class action is both legally and factually dissimilar. Id. at 6–7.

The parties do not contest that the injuries of the putative class occurred in South Carolina, and thus, the court finds that the third prong of the local controversy exception

is satisfied.  See 28 U.S.C. § 1332(d)(4)(A)(i)(III).  The court analyzes the first, second, and fourth prong of the local controversy exception in turn, finding that the pleadings and evidence support remand to state court.

### 1. Citizenship of the Homeowner Plaintiff Class

The first prong of the local controversy exception requires plaintiffs to establish that "greater than two-thirds of the [class] members . . . in the aggregate are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(A)(i)(I).  In considering jurisdiction, a person is a citizen of the state in which she or he is domiciled. Cricket Commc'ns, 865 F.3d at 195.

In addition to the putative class definition, plaintiffs assert that the class identified in this action is "limited to homeowners seeking recovery for widespread vinyl siding deficiencies" within the Legacy subdivision in Summerville, South Carolina.  ECF No. 11 at 11.  As such, plaintiffs argue that the court may presume that at least two-thirds of the Legacy homeowners within the subdivision are citizens of South Carolina.  Id. at 9. In support of their argument, plaintiffs allege that 96% (198 of 207) of the putative class's deeds provide that their Legacy address in South Carolina is the "grantee(s) address".  Id.  Additionally, plaintiffs assert that 96% (198 of 207) of putative class receives the 4% owner-occupied, South Carolina primary residence tax assessment.  Id. Plaintiffs provide supporting records which identify the Legacy homes, the putative class members, and evidence of South Carolina citizenship.  See ECF No. 33.

DRH argues that plaintiffs have not met their burden to demonstrate the United States or South Carolina citizenship of the putative class under Scott v. Cricket Communications LLC, 865 F.3d 189, 195 (4th Cir. 2017).  ECF No. 16 at 7–11.

Specifically, DRH contends that "residency by itself is insufficient to establish citizenship," and thus, plaintiffs' residency data is insufficient to establish domicile. Id. at 7–8 (quoting Bowen v. Houser, 2011 WL 380455, at *7 (D.S.C. 2011)). Further, DRH asserts that the broadly defined putative class, which includes partial owners who may not be citizens of South Carolina, coupled with plaintiffs' "minimal information on the proposed class members" and "inconclusive publicly available" records do not satisfy the first prong of the local controversy exception. Id. at 9–10.

Plaintiffs disagree with DRH's characterization of their evidence and the legal standards which DRH cites. ECF No. 20 at 7–8. First, plaintiffs argue that DRH's reliance on the domicile requirements of Scott v. Cricket Communications is misguided in light of the CAFA exception jurisprudence within the Fourth Circuit. Id. Second, plaintiffs point to 2022 United States Census data to show that in the relevant population of Dorchester County, South Carolina—the zip code in which the Legacy subdivision is located—99% (56,041 of 56,778) of the total population are United States citizens. Id. at 8; see ECF No 20-3. Third, plaintiffs assert that their residency evidence is adequate and that they should not be required to produce "declarations from potential class members of their intent to stay in South Carolina" as DRH suggests. ECF No. 20 at 8.

As a first cut, plaintiffs have sufficiently alleged United States citizenship. Plaintiffs provided 2022 United States Census data showing that the Legacy subdivision is located within an area comprised of 99% (56,041 of 56,778) United States citizens. ECF No. 20-3 at 8. Neither DRH nor the subcontractor defendants contested plaintiffs' United States citizenship data at the hearing. See ECF 49. Accordingly, the court finds that plaintiffs have adequately alleged that at least two-thirds of the members of the

putative class are United States citizens. See Russo v. Eastwood Constr. Partners, LLC, 2023 WL 2386453, at *11 (D.S.C. Mar. 7, 2023) (finding United States citizenship of a putative class satisfied where the plaintiffs produced United States Census data showing 96.7% of the population in a region is made up of United States citizens).

In cases in which plaintiffs do not base citizenship on the class definition, they must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state.[5] See Cricket Commc'ns, 865 F.3d at 195 ("As courts of limited jurisdiction, we are constitutionally prohibited from 'inferr[ing] argumentatively' that a person's residency is her domicile." (alteration in original) (quoting Brown v. Keene, 33 U.S. 112, 115 (1834))). The Fourth Circuit has specified that when citizenship is questioned,

> [A] court must make an individualized inquiry relying on certain factors such as voter registration; current residence; the location of real and personal property; location of bank and brokerage accounts; membership in clubs, churches, or other associations; place of employment or business; driver's license and automobile registration; and the state to which a person pays taxes . . . . No single factor is dispositive.

Id. Many of these factors are publicly available. Id. at 196. The party seeking to establish citizenship of the proposed class does not need to make a "definitive determination of domicile" but "must provide enough facts to allow a court to determine—not speculate—that it is more likely than not that the class action belongs in federal court." Id. at 196–97.

---

[5] Plaintiffs have complicated the question of South Carolina citizenship by defining the class as "All persons and entities that own, in whole or in part," a home within the Legacy subdivision. See Compl. ¶ 38. One clear method to avoid the question of residency versus citizenship is to limit the class to those affected citizens, not just residents of a geographic area. See Johnson v. Advance Am., 549 F.3d 932, 937–38 (4th Cir. 2008) (recognizing plaintiffs had "taken care" to avoid federal jurisdiction under CAFA by limiting the class to South Carolina citizens).

In accordance with this domicile requirements of <u>Scott v. Cricket</u> <u>Communications</u>, district courts in the Fourth Circuit have held that a party seeking remand under a CAFA exception must do more than set forth residency numbers.  <u>See</u> <u>Craft v. S.C. State Plastering, LLC</u>, 2016 WL 11608327, at *4 (D.S.C. Sept. 8, 2016) (denying remand under local controversy exception because the plaintiff's evidence "that only 6.67% of the potential class members have a secondary residence" and "only 18.75% of the potential class members [were] assessed at the six percent tax ratio for non-owner-occupied homes" was insufficient to establish that class members were "both United States citizens and . . . domiciled in South Carolina."); <u>Bowen</u>, 2011 WL 380455, at *8 (denying remand under local controversy exception because although the "Plaintiffs have provided evidence that . . . class members reside in South Carolina, . . . residency is insufficient to establish domiciliary intent").  However, some courts have allowed evidence of residency to create a rebuttable presumption of citizenship in CAFA exceptions cases.  <u>See</u> <u>Cook v. S.C. Pub. Serv. Auth.</u>, 2020 WL 869741, at *7 (D.S.C. Jan. 21, 2020) (applying residency-domicile presumption for grant of remand under local controversy exception); <u>Brunetti v. D.R. Horton, Inc.</u>, No. 2:23-cv-06006-RMG, at 7–9 (D.S.C. Feb. 20, 2024) (applying the residency-domicile presumption because "the evidentiary standard for establishing citizenship for the CAFA local controversy exception 'must be guided by practicality and reasonableness.'" (quoting <u>Cook</u>, 2020 WL 869741, at *8)); <u>Mason v. Lockwood, Andres & Newnam, P.C.</u>, 842 F.3d 383, 392–93 (6th Cir. 2016) (explaining that courts that have refused to apply the residency-domicile presumption have wrongly assumed the exceptions were jurisdictional); <u>see also</u> <u>Russo</u>, 2023 WL 2386453, at *12 ("[T]he court agrees with the court in <u>Cook</u> and determines

13

that neighborhoods of single-family homes in the suburbs of Charleston are likely comprised of at least two-thirds South Carolina citizens."). The Fourth Circuit has intimated that, because CAFA exceptions are not jurisdictional, application of the residency-domicile presumption may be proper to determine the citizenship of members of a putative class.[6] Cricket Commc'ns, 865 F.3d at 198 n.6.

The court agrees with the holdings in Cook, Russo, and Brunetti: a neighborhood of single-family homes located within South Carolina is likely comprised of at least two-thirds South Carolina citizens.[7] See Cook, 2020 WL 869741, at *7; Russo, 2023 WL 2386453, at *12; Brunetti, No. 2:23-cv-06006-RMG, at 7; see also Bryant v. Geico Cas. Co., 2023 WL 8437228, at *6 (D. Md. Dec. 5, 2023) (agreeing with analysis in Cook and

---

[6] The Fourth Circuit has not explicitly defined whether the domicile requirements set forth in Scott v. Cricket Communications also apply to CAFA exception cases—including those that implicate the local controversy exception. See 865 F.3d at 198 n.6. Rather, the court acknowledged that other circuits have held that for CAFA exception cases, the plaintiffs were able to establish a rebuttable presumption that a person's residence is his domicile. Id. (citing Mason, 842 F.3d at 390). However, the Fourth Circuit noted that a lower standard applying residency, not domicile, was only appropriate in those cases because the CAFA exceptions, like the local controversy exception, are not jurisdictional. Id. (first citing Mason, 842 F.3d at 392; and then citing Serrano v. 180 Connect, Inc., 478 F.2d 1018, 1023 (9th Cir. 2007)). In other words, a party asserting the exception does not encounter presumptions against federal jurisdiction. Id. It is unclear whether this footnote implies the Fourth Circuit is open to accepting residency as a proxy for domicile in local controversy exception cases or was merely noting why residency as alleged in the notice of removal was insufficient in Scott v. Cricket Communications.

[7] Two circuits have recognized that a heighted requirement for showing citizenship of each class member "would render class actions 'totally unworkable.'" Adams, 958 F.3d at 1223 (quoting Preston v. Tenet Healthsystem Mem'l Med. Ctr., 485 F.3d 793, 816 (5th Cir. 2007)); Lax v. App of N.M. ED, PLLC, 2022 WL 2711230 (10th Cir. July 13, 2022). Though a court may not rely on "sensible guesswork" in determining citizenship, the Tenth Circuit instead suggested that the CAFA exceptions should require an evidentiary standard based on "practicality and reasonableness," whereby the defendants must show that the plaintiffs' method to determine citizenship was unreasonable. Lax, 2022 WL 2711230, at *5 (citing Preston, 485 F.3d at 816).

<u>Russo</u> and applying residency-domicile presumption to Maryland insurance policy holders class action).

Plaintiffs have sufficiently alleged South Carolina citizenship.  Plaintiffs provided the court with property-tax records which demonstrate that 98% (198 of 207) of the putative class are assessed the 4% owner-occupied, primary residence tax rate.  <u>See</u> ECF No. 11-3.  Notably, to receive the 4% tax rate, each member of the putative class was required to submit an application and affidavit under penalty of perjury affirming that their Legacy residence is their "domicile."  <u>See</u> S.C. Code Ann. § 12-43-220(c)(2)(i), (ii), & (iv)).  Thus, using plaintiffs' residency evidence, the court may presume that 98% (198 of 207) of the putative class are citizens of South Carolina.  <u>See</u> <u>Cook</u>, 2020 WL 869741, at *7.

Plaintiffs further supplement their residency-domicile argument with evidence of South Carolina citizenship, evincing putative class members' "intent to remain" in South Carolina.  <u>See</u> <u>Cricket Commc'ns</u>, 865 F.3d at 195.  Plaintiffs provided the court with a table setting forth the addresses of the Legacy homes, names of the putative class members, and that 98% (198 of 207) of Legacy homeowners listed their Legacy address in South Carolina as the "grantee(s) address" in the deed to their Legacy home.  <u>See</u> ECF No. 33.  Further, plaintiffs supplied evidence that 88% (216 of 244) of all vehicles registered to putative class members are registered in Dorchester County, South Carolina. <u>See</u> ECF No. 33.  DRH has neither rebutted the presumed South Carolina citizenship of the putative class members, nor have they shown that plaintiffs' methods of determining citizenship are unreasonable.  <u>See</u> ECF Nos. 16 at 7–11; 49.  Thus, the court finds that

plaintiffs have made the requisite showing that at least two-thirds of the putative class are citizens of South Carolina.  See 28 U.S.C. § 1332(d)(4)(A)(i)(I).

Having found that the plaintiffs met their burden on the first prong of the local controversy exception, the court turns to the second prong.

### 2. Local Defendant(s) Form a Significant Basis of Claims and From Whom Class Members Seek Significant Relief

Under the second prong of the local controversy exception, plaintiffs must show that at least one defendant (a) is a citizen of the state in which the action was originally filed; (b) whose conduct "forms a significant basis" for the putative class's claims; and (c) from whom members of the proposed plaintiff class are seeking "seeking significant relief".  28 U.S.C. § 1332(d)(4)(A)(II).  The Fourth Circuit has not defined "significant basis" or "significant relief" in connection with the local controversy exception.  See Goldberg, 2024 WL 1050942, at *10; Craft, 2016 WL 11608327, at *5.  Courts within the Fourth Circuit have looked to Senate Report 109–14 for guidance, which provides:

> [T]he Committee intends that the local defendant must be a primary focus of the plaintiffs' claims–not just a peripheral defendant. The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership), as well as being a defendant whose alleged conduct forms significant basis for the claims asserted by the class.

S. Rep. No. 109–14, at 40 (2005); see Eakins, 455 F. Supp. 2d at 452 ("The Senate Report on CAFA reveals an intention that the [terms] 'significant relief' and 'significant basis' under the second prong [] define truly local controversies.").  Importantly, the Fourth Circuit has held that the plain language of the local controversy exception at 28 U.S.C. § 1332(d)(4)(A) permits courts to aggregate the alleged conduct and harms of multiple named local defendants to determine whether "significant basis" and "significant relief" are present.  Quicken Loans, 737 F.3d at 966.

The court first turns to whether any defendant is a local defendant and then applies the standards for "significant basis" and "significant relief" in turn.

### a. Local Defendant(s)

A local defendant for purposes of the local controversy exception is one "who is a citizen of the state in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(II)(cc). Plaintiffs sued DRH, Pro Exteriors, Archer, and a class of unidentified John Does. See Compl. All three of the named defendants are corporate entities. Id. ¶¶ 9–15. Of the three named defendant entities, plaintiffs first contend that Pro Exteriors, a limited liability company and the subcontractor for the installation of exterior vinyl siding in the Legacy subdivision, is a local defendant. ECF No. 10 at 2. DRH concedes that "Professional Exteriors is a South Carolina limited liability company and the only named South Carolina defendant." ECF No. 16 at 3. Pro Exteriors likewise admits that it is a South Carolina citizen in its answer. ECF No. 29 ¶ 15.

Plaintiffs next argue that additional local defendants have been identified and will be substituted for John Does 1–50, and therefore should be aggregated with Pro Exteriors in the court's second prong inquiry. ECF No. 20 at 1–2. Plaintiffs assert that the subcontractors named in Archer's third-party complaint—the Roofing Joint Venturers[8] and James Bayless—are the subcontractors that plaintiffs named as John Does 1–50. ECF No. 20 at 1–2. Archer identified each member of the Roofing Joint Venturers and James Bayless as citizens of South Carolina, ECF No. 20 at 6–9, and stated at the hearing

---

[8] The third-party defendants that Archer identifies as the "Roofing Joint Venturers" are Mario Salgado a/k/a Maria A. Salgado; Sabino Fino Villanueva; Gracelia Reza Rodiles; Antonio Gaspar d/b/a MSC Exteriors, LLC; and NZR Construction, LLC. ECF No. 20 at 1 n.1.

that it served each third-party defendant at their South Carolina addresses, ECF No. 49.

Neither DRH nor Archer or Pro Exteriors contested plaintiffs' aggregation of the Roofing

Joint Venturers and James Bayless with Pro Exteriors as local defendants. ECF No. 49.

Under Fourth Circuit precedent, aggregation of Pro Exteriors, the Roofing Joint

Venturers, and James Bayless is proper because each is a citizen of South Carolina, a

named party in the lawsuit, and operates as a construction subcontractor for residential

developments within Dorchester County, South Carolina. See Quicken Loans, 737 F.3d

at 965–66. Therefore, this aggregation bolsters the court's finding that this matter is

"truly local controversy—a controversy that uniquely affects a particular locality to the

exclusion of all others." S. Rep. No. 109–14, at 38 (2005).

As such, the court finds that Pro Exteriors, the Roofing Joint Venturers, and

James Bayless are citizens of South Carolina and therefore adequate local defendants for

the focus of the court's second prong inquiry.

### b. Significant Basis

Next, the court finds that plaintiffs have shown that the conduct of Pro Exteriors,

the Roofing Joint Venturers, and James Bayless forms a "significant basis" for the claims

asserted by the putative class.

The Fourth Circuit has not adopted a specific test regarding how to assess

"significant basis". Goldberg, 2024 WL 1050942, at *10. However, the Third Circuit

has held that "significant basis" under the local controversy exception requires that there

be "at least one local defendant whose alleged conduct forms a significant basis for all

the claims asserted in the action." Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 155

(3d Cir. 2009) (emphasis added). "[T]he local defendant's alleged conduct must be an

18

important ground for the asserted claims in view of the alleged conduct of all the [d]efendants." Id. at 157. Therefore, "the significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the [d]efendants." Id. at 156. A majority of district courts within the Fourth Circuit have applied the Kaufman analysis to determine "significant basis" under the local controversy exception. See Craft, 2016 WL 11608327, at *5 (applying Kaufman); Priselac, 561 F. Supp. 3d at 575–76 (same); Goldberg, 2024 WL 1050942, at *10 (same); Carter v. Allstate Ins. Co., 2012 WL 3637239, at *10 (N.D.W. Va. Aug. 21, 2012) (same); Martin v. State Farm Mut. Auto. Ins. Co., 2010 WL 3259418, at *7–8 (S.D.W. Va. Aug. 18, 2010) (same).

The Third Circuit has provided several factors to inform a court's comparison of the local defendant's alleged conduct to the alleged conduct of all defendants: (1) the relative importance of each of the claims to the action; (2) the nature of the claims and issues raised against the local defendant; (3) the nature of the claims and issues raised against all defendants; (4) the number of claims that rely on the local defendant's alleged conduct; (5) the number of claims asserted; (6) the identity of the defendants; (7) whether the defendants are related; (8) the number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct; and (9) the approximate number of members in the putative classes. Kaufman, 561 F.3d at 157 n.13.

Courts have not articulated a clear test to determine what level of conduct rises to "significant basis," but Kaufman required that the local defendant's conduct impact "all of the claims asserted in the action." Kaufman, 561 F.3d at 155. Courts have varied as to what percentage of claims affected by the local defendant(s) rises to a "significant basis."

See, e.g., Benko v. Quality Loan Serv. Corp., 789 F.3d 1111, 1119 (9th Cir. 2015) (finding "significant basis" when a local defendant impacted between 15% to 20% of a plaintiff class); Allen v. Boeing Co., 821 F.3d 1111, 1116 n.3 (9th Cir. 2016) (finding "significant basis" when the plaintiffs alleged a local defendant was 50% responsible for the class claims); cf. Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc., 655 F.3d 358, 362 n.5 (5th Cir. 2011) (finding no "significant basis" when a local defendant's conduct impacted only 6.9% of a plaintiff class); see also Russo, 2023 WL 2386453, at *17 (finding "significant basis" where 96% of class members would seek relief from local defendants).

Several factors weigh against finding a "significant basis." At this stage, there remains some unidentified John Doe defendants. See Compl. ¶¶ 13–15; see Quicken Loans, 737 F.3d at 966 (disallowing aggregation of unnamed defendants for second prong of local controversy exception). Notably, one defendant links every party and claim within this action: DRH. See generally Compl. DRH is an out-of-state business entity, which implicates interstate commerce more so than local, intrastate commerce. See Priselac, 561 F. Supp. 3d at 571; see also, Compl. ¶ 5 (detailing that DRH is a national corporation organized under the laws of Delaware); ECF No. 16 at 3 (noting that DRH's headquarters and nerve center is in Texas). The court considers DRH's control of the construction and sale of the Legacy homes in comparison to the aggregate conduct of Pro Exteriors, the Roofing Joint Venturers, and James Bayless. See Kaufman, 561 F.3d 144 at 157.

A majority of the Kaufman factors weigh in favor of finding a "significant basis" present. The nature of the claims are that of a "quintessential local controversy"—local

subcontractors are alleged to have deficiently constructed homes within South Carolina that were purchased by citizens of South Carolina. ECF No. 20 at 5 (quoting Russo, 2023 WL 2386453, at *17). The conduct and alleged harms caused by Pro Exteriors, the Roofing Joint Venturers, and James Bayless are implicated in every cause of action pleaded by the plaintiffs. See Compl. ¶¶ 58–74; cf. Priselac, 561 F. Supp. 3d at 576 (finding no "significant basis" where the local defendant was named in only five of nine causes of action). Plaintiffs are pursuing claims directly against Pro Exteriors, the Roofing Joint Venturers, and James Bayless because each, as a subcontractor, did the "actual labor swinging the hammers" for construction. ECF No. 20 at 4. Further, DRH and Archer contracted for, coordinated, and directed Pro Exteriors, the Roofing Joint Venturers, and James Bayless's construction activity. Id.; see Est. of Hanna, 2015 WL 247906, at *5–6 (finding significant basis where the local defendant entities were related to one another as "subsidiary, sister, and affiliated corporations" engaged in same business activity). Plaintiffs seek the same relief—damages as well as repair and replacement of deficient construction—from each local defendant. See Compl. ¶ 74. Plaintiffs emphasize that their claims against Pro Exteriors, the Roofing Joint Venturers, and James Bayless are not for vicarious or a form of secondary liability, but rather, that each is directly liable for their conduct. ECF No. 20 at 6. The court considers the crossclaims filed by DRH against Pro Exteriors and the third-party claims filed by Archer against the Roofing Joint Venturers and James Bayless as an indication that DRH and Archer believe the work done by the local defendants to be responsible for the construction defects and thus, the claims of the putative class. See ECF Nos. 4 ¶¶ 81–124; 19 ¶¶ 32–68.

21

Here, plaintiffs assert that Pro Exteriors installed the exterior vinyl siding on 87.9% (182 of 207) of the homes in the Legacy subdivision and that every member of the putative class impacted by Pro Exteriors's installation seeks direct relief from Pro Exteriors. ECF No. 20 at 2. The Roofing Joint Venturers and James Bayless installed the roofing on 100% (207 of 207) of the homes in the Legacy subdivision, and thus every member of the putative class seeks relief from the Roofing Joint Venturers and James Bayless. Id.

When the alleged conduct of local defendants Pro Exteriors, the Roofing Joint Venturers, and James Bayless is compared to that of all defendants as a whole, it is clear to the court that the conduct of the local defendants is both practically and proportionally an important ground for all of the claims of the putative class, local to South Carolina, affecting the claims of an overwhelming majority of the putative class. Kaufman, 561 F.3d at 155–57. Accordingly, the court finds that local defendants Pro Exteriors, the Roofing Joint Venturers, and James Bayless' alleged conduct forms a "significant basis" for the claims asserted by the putative class.

### c. Significant Relief

Finally, the court finds that plaintiffs have shown that the putative class seeks "significant relief" from local defendants Pro Exteriors, the Roofing Joint Venturers, and James Bayless.

In the absence of a specific test adopted by the Fourth Circuit "the 'significant relief' requirement has been interpreted to mean those defendants from whom plaintiffs seek most of the relief." Priselac, 561 F. Supp. 3d at 575 (quoting Laws v. Priority Tr. Servs. of N.C., L.L.C., 2008 WL 3539512, at *5 (W.D.N.C. Aug. 11, 2008)). This

22

analysis requires not only "an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants." Evans v. Walter Indus., Inc., 449 F.3d 1159, 1167 (11th Cir. 2006) (quoting Robinson v. Cheetah Transp., 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006)); see Craft, 2016 WL 11608327, at *5–6 (applying Evans in the absence of guidance from the Fourth Circuit); Priselac, 561 F. Supp. at 574 (same); Carter, 2012 WL 3637239, at *9–10 (same). Where the putative class seeks "significantly more relief from an out-of-state defendant than a local defendant, the class does not seek 'significant relief' from the local defendant." Priselac, 561 F. Supp. 3d at 575. "[A] defendant's ability to pay is irrelevant to the question of 'significant relief.'"[9] Smith v. Marcus & Millichap, Inc., 991 F.3d 1145, 1161 (11th Cir. 2021).

Plaintiffs argue that the putative class seeks significant relief from local defendants Pro Exteriors, the Roofing Joint Venturers, and James Bayless because, in the aggregate, their work impacted 100% (207 of 207) of putative class. ECF No. 20 at 2. Plaintiffs allege that the local defendants' deficient installation of roofing and exterior vinyl siding has caused wind, water, and structural damage to their homes. Compl. ¶¶ 27–37. As a result, plaintiffs assert that every member of the putative class seeks relief

---

[9] The Eleventh Circuit in Marcus & Millichap found that "[t]he significant defendant provision is unambiguous in its requirement that the defendant be one 'from whom significant relief is sought by members of the plaintiff class.'" 991 F.3d at 1161 (quoting 28 U.S.C. § 1332(d)(4(A)(i)(II)(aa) (emphasis added)). "That requirement does not equate to a defendant from whom significant relief may be obtained." Id.; see also Coffey v. Freeport McMoran Copper & Gold, 581 F.3d 1240, 1244–45 (10th Cir. 2009) ("The statutory language is unambiguous, and a 'defendant from whom significant relief is sought' does not mean a 'defendant from whom significant relief may be obtained.'").

directly from the local defendants in the form of damages and repair or replacement of failing structures.  ECF No. 20 at 2.

In response, DRH argues that plaintiffs' have not provided sufficient information for the court to determine the scope of the allegations and relief sought among DRH and the subcontractor defendants.  ECF No. 16 at 3.  Specifically, DRH notes that plaintiffs have not quantified the relief sought or distinguished which homes seek relief for either roofing or exterior vinyl siding or both.  Id.

Apportionment of relief is relevant when considering significance of such relief. See Priselac, 561 F. Supp. 3d at 575.  However, the court has not required plaintiffs to specify an exact amount or approximate a sum of relief sought to determine "significant relief" under the second prong of the local controversy exception.  See e.g., Est. of Hanna, 2015 WL 247906, at *4 (finding "significant relief" because damages could have been sought from either defendant, or both, though complaint did not differentiate between sums sought from one defendant versus the other).  Here, the fact that plaintiffs did not exactly quantify the damages and relief sought by from each individual member of the putative class is not fatal their claims.  See id.  Plaintiffs state in their complaint, and emphasize, that the putative class seeks actual and punitive damages in addition to joint and several relief against all defendants.  Compl. ¶ 74; ECF No. 20 at 2–3.  Courts have found that similar relief structures weigh in favor of finding that "significant relief" is met.  See Smith, 991 F.3d 1145, 1160 (11th Cir. 2021) (finding a local defendant "significant" in part because "the complaint seeks joint and several liability against both [the defendants] for all damages."); Mungo v. Minn. Life Ins. Co., 2011 WL 2516934, at *4 (D.S.C. June 23, 2011) (finding a defendant significant because plaintiff "seeks actual,

statutory, and punitive damages from [that defendant].").  Importantly, a significant portion of the aggregate relief sought by the putative class from Pro Exteriors, the Roofing Joint Venturers, and James Bayless—repair and replacement of deficient installation of roofing and exterior vinyl siding—cannot be obtained directly from DRH or Archer because they do not build homes themselves.  Thus, the putative class seek "significant relief" from the local defendants because every member of the putative class was harmed by either Pro Exteriors, the Roofing Joint Venturers, or James Bayless, and each member of the putative class seeks direct relief from the local defendants.  See Evans, 449 F.3d at 1167.

Accordingly, the court finds that plaintiffs have adequately shown that the putative class seeks "significant relief" from local defendants Pro Exteriors, the Roofing Joint Venturers, and James Bayless.  Therefore, the court finds that plaintiffs have satisfied the second prong of the local controversy exception.  See 28 U.S.C. § 1332(d)(4)(A)(i)(II).

### 3.  Similar Class Actions

The fourth prong of the local controversy exception requires that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."  28 U.S.C. § 1332(d)(4)(A)(ii).

The court must determine "whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of actions were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects)."  S. Rep. No. 109–14, at 41 (2005); see McAteer v.

25

<u>DCH Reg'l Med. Ctr.</u>, 2018 WL 1089873, at *6 (N.D. Ala. Feb. 26, 2018) ("CAFA does not require common questions o[f] law or fact . . . [or] identical parties."). "The purpose of this factor is efficiency and fairness: to determine whether a matter should be subject to federal jurisdiction so that it can be coordinated with other overlapping or parallel class actions." S. Rep. No. 109–14, at 36 (2005). The "similar class action" prong is intended "to ensure that defendants did not face copycat, or near copycat, suits in multiple forums." <u>Brunetti</u>, No. 2:23-cv-06006-RMG, at 9 (quoting <u>Voldenichar v. Halcon Energy Props., Inc.</u>, 733 F.3d 497, 508-09 (3rd Cir. 2013)).

The parties contest whether one class action precludes remand to state court: <u>Vriens</u>, No. 2:23-cv-06797-DCN.

### a. The <u>Fernandes</u> Class Action

Plaintiffs contend that "[n]o previous actions involving [the putative class] and these Legacy homes have ever been filed." ECF No. 11 at 12. This case concerns deficient installation of roofing and exterior vinyl siding on 207 single-family homes within the Legacy subdivision in Dorchester County, South Carolina. <u>See</u> Compl. Plaintiffs state they have suffered property damage caused by wind and water intrusion and structural failures. <u>Id.</u> ¶¶ 27–37. In the case at bar, the putative class is defined in pertinent part as: "All persons and entities that own, in whole or in part, a home within the Legacy at Pine Forest development located in Dorchester County, South Carolina." <u>Id.</u> ¶ 38. Anticipating that DRH would reference the <u>Vriens</u> class action, plaintiffs delineate this class action as "analytically different" and "concerning different neighborhoods [and] different class members." <u>Id.</u> (citing <u>Brunetti</u>, No. 2:23-cv-06006-

RMG, at 9). Plaintiffs also assert that this case is not "a likely candidate for consolidation" with <u>Vriens</u> or any future class action. ECF No. 11 at 13.

### b.  **The <u>Vriens</u> Class Action**

DRH argues that the local controversy exception should not be applied because the <u>Vriens</u> class action involves similar claims against similar defendants and the <u>Vriens</u> class definition encompasses the Legacy subdivision. ECF No. 16 at 5–6. The <u>Vriens</u> class action was filed on October 30, 2023 in the Charleston County Court of Common Pleas against a class of roofing subcontractor defendants and was removed to federal court by DRH on December 19, 2023. Amend. Compl., <u>Vriens</u>, No. 2:23-cv-06797-DCN, ECF No. 1-1 [hereinafter <u>Vrines</u>, Amend. Compl]. In <u>Vriens</u>, the proposed class is defined as: "All persons and entities that are owners of residences built by D.R. Horton in Coastal South Carolina which were permitted for construction on or after July 1, 2016." <u>Id.</u> ¶ 10. Coastal South Carolina is defined as the portion of "Beaufort, Colleton, Charleston, Dorchester, Berkeley, Georgetown, and Horry Counties that are in a 140 mph or greater wind zone under the International Residential (Building) Code ("IRC"), 2015, 2018, and 2021 editions, as adopted in South Carolina." <u>Id.</u> ¶ 9. The <u>Vriens</u> plaintiffs allege their homes have "roofing that has non-compliant underlayment and non-compliant underlayment fastener patterns" installed by DRH and a class of roofing subcontractors in violation of the IRC. <u>Id.</u> ¶ 23.

The court's "similar class action" inquiry looks exclusively to whether a class action filed within the three years preceding asserts the same or similar <u>factual allegations</u>, not whether they assert the same or similar causes of action. <u>Dutcher v. Matheson</u>, 840 F.3d 1183, 1191–92 (10th Cir. 2016); <u>Dernoshek v. FirstService</u>

27

Residential, Inc., 2021 WL 1060208, at *4 (M.D.N.C. Mar. 19, 2021) (holding the plain
language of 28 U.S.C. § 1332(d)(4)(A)(ii) mandates that the local controversy exception
cannot not apply if similar factual allegations are present). "[A] prior action lacks similar
factual allegations where '[t]he proof necessary to prevail [in the prior action] differs in
all crucial respects from the proof necessary to prevail [o]n behalf of the proposed class
in this action.'" Priselac, 561 F. Supp. 3d at 572 (quoting Rasberry v. Capitol Cnty. Mut.
Fire Ins. Co., 609 F. Supp. 2d 594, 605 (E.D. Tex. 2009)).

　　Two class actions arising from the same set of facts are dissimilar, and thus the
local controversy exception may apply, where the principal objects of the suits are
"factually and analytically distinct." Rasberry, 609 F. Supp. 2d at 605 (explaining that
two actions stemming from Hurricane Rita lacked similar factual allegations because one
action challenged the county's failure to pay contractor overhead and profit and sought
monetary relief, while the other challenged the county's use of unlicensed adjusters and
sought only declaratory and injunctive relief).

　　The "similar class action" analysis in Brunetti v. D.R. Horton, Inc. is instructive.
There, the court found two class actions as dissimilar that involved plaintiff classes of
different subdivisions within the same South Carolina county and asserting allegations
against DRH relating to defective construction of septic tank and drainage systems.
Brunetti, No. 2:23-cv-06006-RMG, at 10–11. The Brunetti court found it persuasive that
the claims of the plaintiff classes arose from "different neighborhoods, different land,
different soils, different defendants" and that the claims "stem[] from separate acts of
wrongdoing resulting in harm in different locations involving completely different classes
of victims." Id. at 11. The factual allegations in the two class actions required an

28

"intense focus" on the different topography, soil, and natural drainage of the subdivision's unique locations, even though both were constructed by DRH and within the same county.  Id.  Further, the class actions required "individualized proof requirements" to prevail and thus, there was no prospect of class consolidation.  Id. 12–13.  Ultimately, the Brunetti court found the two class actions dissimilar, applied the local controversy exception, and remanded the class action at issue.  Id.

At the outset, the court must engage in the "similar class action" inquiry because the plaintiffs in Vriens filed their case within the three years preceding plaintiffs' filing this case.  See Vriens, Amend. Compl. supra.; Compl.  Both this case and Vriens concern deficient roofing installation by DRH and Archer.  See Vriens, Amend. Compl. supra.; Compl.  The similarities of the class actions in this case and Vriens end there, at surface level.

The court finds that this case and Vriens class actions are dissimilar in three material aspects; thus, the court may properly apply the local controversy exception.  First, this case concerns deficient installation of roofing shingle components.  Compl. ¶¶ 23, 29(a)–(b).  Unlike Vriens, the complaint in the case at bar contains no factual allegations or claims regarding roofing underlayment or underlayment fastener patterns.  See id.  Further, this case involves the deficient installation of exterior vinyl siding; the factual allegations in Vriens are limited to roofing.  Id. ¶ 29(c).  Thus, the factual allegations in this case are dissimilar from those in Vriens.

Second, the allegations in this case are different from those in Vriens, meaning the evidence necessary for plaintiffs to prevail in this case will be distinct from that necessary in Vriens.  Priselac, 561 F. Supp. 3d at 572.  To prevail in Vriens, those

plaintiffs will need to prove the defendants' compliance with the IRC's provisions for installing roofing on homes located in "high wind zones," a rating for wind speeds of 140 mile per hour or greater. See Vriens, Amend. Compl., supra ¶¶ 20–23. In contrast, the Legacy subdivision in this case is not located within a high wind zone and was built according to different building codes, specific to its location. See ECF No. 20-2 at 2. Thus, prevailing on the claims of deficient roofing installation by the putative class in this case will not involve the IRC, high wind zone roofing materials and procedures, or any overlapping analysis of the unique subdivision location in Vriens.

Finally, at the hearing and contrary to the arguments in their briefing, counsel for DRH, Archer, and Pro Exteriors conceded that the "high wind zone" class definition in Vriens excluded the Legacy subdivision. ECF No. 49. Therefore, plaintiffs in this case and the purported class in Vriens could not be consolidated as a single class. See Voldenichar, 733 F.3d at 508–09. Stated simply, this case is sufficiently dissimilar from Vriens because each case concerns different subdivisions, different homes, different building procedures, and separate acts of wrongdoing resulting in individualized harm to different classes of homeowners. See Brunetti, No. 2:23-cv-06006-RMG, at 10–12. Thus, this case is truly a local controversy.

Finding all four prongs of the local controversy exception met, the court remands this action to state court. See 28 U.S.C. § 1332(d)(4)(A). Plaintiffs have established that (1) two-thirds of the putative class are citizens of South Carolina; (2) Pro Exteriors, the Roofing Joint Venturers, and James Bayless are local defendants whose installation of roofing and exterior vinyl siding forms a "significant basis" for the claims of the putative class and that the putative class seeks "significant relief" from the local defendants; (3)

the injuries of the putative class incurred in South Carolina; and (4) no similar class action has been filed in the three years preceding the filing of this case.

### IV.   CONCLUSION

For the foregoing reasons the court **GRANTS** the motion to remand and **FINDS AS MOOT** the motions to compel arbitration and motion to stay.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 4, 2025**
**Charleston, South Carolina**